**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re Xcel Energy, Inc. Securities, Derivative & ERISA Litigation | Master File: Civil 02-2677 (DSD/FLN) |
| | MDL No. 1511 |
| This Document Relates to Case Nos. 03-2218 and 03-2219, the "ERISA Actions." | |

### STIPULATION AND AGREEMENT OF SETTLEMENT OF ERISA ACTIONS

This Settlement Agreement ("Agreement") is made as of December 31, 2004, by and among the following parties (as defined in this Agreement):  (1) the Class Representatives and the Plans, by and through Class Counsel; and (2) Xcel Energy Inc. and the Individual Defendants, by and through their attorneys, pursuant to Rule 23 of the Federal Rules of Civil Procedure and subject to the Court's approval.

### 1.   RECITALS

1.1    This Agreement resolves two related actions originally filed in 2002 in the United States District Court for the District of Colorado against the Defendants asserting claims arising under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"):  <u>Donald Newcome and Leonard Banks v. Xcel Energy, Inc., et al.</u> and <u>Gene Barday v. Xcel Energy, Inc., et al.</u>  The complaints allege that the Defendants breached their fiduciary duties and otherwise violated ERISA by using employer and employee contributions to the Xcel Energy Inc. 401(k) Savings Plan and its predecessor plans (the "Xcel 401(k) Plan") and the New Century Energies

Employees' Savings and Stock Ownership Plan for Bargaining Unit Employees and Former Non-Bargaining Unit Employees (the "NCE Union Plan") (collectively, the "Plans") to purchase the common stock of Xcel at a time when, according to Plaintiffs, it was an unsuitable and imprudent investment for the Plans. Plaintiffs also allege that Defendants violated ERISA by failing to take appropriate actions to protect participants and beneficiaries from losses that resulted from the imprudent acquisition and retention of Xcel common stock by the Plans during the same period. Plaintiffs further allege that Defendants violated ERISA by misrepresenting to Plaintiffs and participants in the Plans the financial status of Xcel and, consequently, the true value of Xcel common stock. These misrepresentations were alleged to include misleading, inaccurate, and incomplete communications with participants regarding the value of Xcel common stock, and its prudence as an investment for the Plans' assets, both directly to participants by Defendants, and in plan-related documents, including the summary plan descriptions. The Complaints seek equitable and compensatory relief on behalf of Plaintiffs, the Class Members and the Plans, pursuant to ERISA §§ 409, 502(a)(2), and 502(a)(3), plus attorneys' fees, expenses, and costs pursuant to the common fund doctrine, ERISA § 502(g)(1), and other law.

1.2     Plaintiffs seek certification pursuant to Fed. R. Civ. P. 23 of a class consisting of all persons who were participants or beneficiaries of either of the Plans between September 23, 1999 and March 31, 2003, and who had Xcel common stock allocated to their accounts in the Plans at any time during such period ("Settlement Class"), other than Defendants individually named in the Complaint and their immediate family members.

1.3     Defendants have denied and continue to deny each of the claims and allegations of wrongdoing in the Complaints. On December 20, 2002, Defendants filed a Motion to Dismiss

the Complaints, which was denied in part and granted in part by the court on March 10, 2004.

On July 21, 2004, Defendants filed a motion for partial summary judgment, which has not yet

been ruled upon by the court.  Defendants have specifically denied and continue to deny, *inter*

*alia*, the allegations that they breached any fiduciary duties or any other provisions of ERISA in

connection with the acquisition or retention of Xcel common stock by the Plans during the Class

Period or at any time, and deny that they in any way misrepresented the financial performance of

Xcel or the value of Xcel common stock either directly or indirectly to participants in the Plans.

Defendants deny that Plaintiffs, the proposed class, or the Plans are entitled to any relief of any

kind.

## 2.   BASIS FOR SETTLEMENT

2.1    Plaintiffs' Counsel as defined below have conducted a thorough investigation into

Plaintiffs' claims, the underlying events and transactions alleged in the Complaints, and the

operation and administration of the Plans, including interviews with members of the purported

class and former agents and employees of Xcel.  Plaintiffs' Counsel has also reviewed thousands

of documents produced by Defendants and third parties through the discovery process, as well as

documents obtained from public sources and the files of Plaintiffs and putative class members.

Additionally, Plaintiffs' Counsel have consulted with experts and made a thorough study of the

legal principles applicable to the actual and potential claims of Plaintiffs, the Plans, and the

Settlement Class.

2.2    Defendants' Counsel as defined below also have conducted a thorough

investigation into Plaintiffs' claims, the underlying events and transactions alleged in the

Complaints, and the operation and administration of the Plans, including interviews with

employees of Xcel.  Defendants' Counsel have reviewed numerous documents and made a

thorough study of the legal principles applicable to the actual and potential claims of Plaintiffs, the Plans, and the Settlement Class in the Action.

2.3     The parties, after engaging in substantial discovery, were ordered by the court (see Order dated October 9, 2004) to engage in mediation.  As a result of the mediation, conducted by a nationally-recognized mediator over the course of two days, followed by extensive written and telephonic communications between Plaintiffs' Counsel, Defendants' Counsel, and the mediator, the parties to the Action agreed to a settlement, the terms of which are embodied in this Settlement Agreement.

2.4     Although the Defendants continue to deny all liability with respect to any and all of the claims alleged in the Complaints, the Defendants nevertheless consider it desirable that any and all possible controversies and disputes that arise out of or relate to the matters, transactions, and occurrences referenced in the Complaints and/or related to the Plans and the investment options in the Plans, be conclusively settled and terminated on the terms and conditions set forth below.  The Settlement of the Action and the attendant final dismissal of the Complaints will avoid the substantial expense, inconvenience, and risk of continued litigation and will bring the claims and potential claims of Plaintiffs, the Plans, the Plans' fiduciaries and the Settlement Class to an end.

2.5     Based on Plaintiffs' investigation and after considering:  (a) the substantial benefits that Plaintiffs, the Plans and the members of the Settlement Class will receive from the Settlement; (b) the risk of litigation; (c) the likely length of time before final resolution of the claims, including time spent in possible appeals if the Action were not settled; and (d) the desirability of permitting the Settlement to be consummated as provided by the terms of this Agreement, Plaintiffs' Counsel has concluded that the terms and conditions of the proposed

Settlement as set forth in this Agreement are fair, reasonable, and adequate to the Plaintiffs, the Plans and the members of the Settlement Class, and Plaintiffs and Plaintiffs' Counsel have agreed to settle and compromise the Action pursuant to the terms and provisions of this Agreement, subject to the approval of the Court.

### 3.    SETTLEMENT TERMS

ACCORDINGLY, THE UNDERSIGNED ATTORNEYS FOR THE PARTIES HEREBY STIPULATE AND AGREE on behalf of their respective clients and the Plans and the Settlement Class to settle, to compromise, and to dismiss this Action with prejudice, subject to the approval of the Court, in the manner and on the terms and conditions set forth below.

In addition to the terms heretofore defined, as used in this Agreement:

3.1    **"Action"** means, collectively, the lawsuits captioned Newcome and Banks v. Xcel Energy, Inc., et al., Civil No. 03-2218 (D. Minn.) and Barday v. Xcel Energy, Inc., et al., Civil No. 03-2219 (D. Minn.).

3.2    **"Administrative Contractors"** means the persons engaged by the Administrators and to whom the Administrators may delegate duties assigned to the Administrators under this Agreement, including, without limitation, duties associated with provision of Notice, calculation of Claims, collection of Releases, and preparation and filing of tax-related documents. It is agreed by the parties hereto that neither the Administrators nor the Administrative Contractors are to be deemed agents or representatives of the Defendants or Defendants' Counsel for any purpose, and that neither Defendants, their Related Parties, nor Defendants' Counsel shall bear any responsibility or liability for any act or omission of any Administrator or Administrative Contractor.

3.3    **"Administrative Expenses"** means the expenses incurred in the administration of this Agreement, including, without limitation, all expenses or costs associated with providing the

Notices described herein and all expenses or costs associated with distribution of the Net

Settlement Fund as described in Section 6, below.  In addition, all reasonable expenses of the

Administrators, the reasonable fees of the Escrow Agent, taxes and tax-preparation expenses

incurred by or on behalf of the Settlement Fund, and the reasonable fees and expenses of the

Administrative Contractors that the Administrators engage, shall be included as Administrative

Expenses and paid from the Settlement Fund.

3.4    **"Administrators"** shall be appointed and supervised by Plaintiffs and Plaintiffs'

Counsel.  They shall serve as the Administrators and trustees of the Settlement Fund and will be

deemed to be acting in that capacity when providing Notice pursuant to Section 10, below.

**"Administrators"** shall, as the context requires, also mean **"Administrative Contractors."**

3.5    **"Agreement"** means the Stipulation and Agreement of Settlement entered herein

by the parties.

3.6    **"Attorneys' Expenses"** means the amount awarded by the Court as

reimbursement for Plaintiffs' Counsel's costs and expenses of litigation, other than costs and

expenses authorized as Administrative Expenses.

3.7    **"Attorneys' Fees"** means the amount awarded by the Court as compensation for

the services provided by Plaintiffs' Counsel.

3.8    **"Authorized Claimant"** means a Claimant whose Settlement Claims the

Administrators determine to be worth at least twenty-five dollars ($25) pursuant to the process

set forth in Section 6.2 below.  **"Authorized Claimants"** refers collectively to Authorized

Former Participant Claimants and Authorized Participant Claimants, as defined herein.

3.9     **"Authorized Former Participant Claimant"** means an Authorized Claimant who is a former participant in either or both of the Plans as of the date the Net Settlement Fund is distributed to the Plans.

3.10    **"Authorized Participant Claimant"** means an Authorized Claimant who is a participant in one of the Plans as of the date the Net Settlement Fund is distributed to the Plans.

3.11    **"Claimant"** means any member of the Settlement Class.

3.12    **"Class"** or **"Settlement Class"** means the class to be conditionally certified by the Court pursuant to the Preliminary Approval Order, consisting of all Persons who were participants or beneficiaries under the Plans during any portion of the Class Period who had Xcel stock allocated to their Plan account at any time during such period, other than persons who are named as Defendants in the Complaints and their immediate family members.

1.13    **"Class Counsel"** or **"Plaintiffs' Counsel"** means the firms of Branstetter, Kilgore, Stranch, & Jennings; Whatley Drake, L.L.C.; Barrett, Johnston & Parsley; Robbins Umeda & Fink, LLP; Brauer, Buescher, Goldhammer, Kelman & Dodge; Gilbert & Sackman, a Law Corporation; Cochrane & Bresnahan, PA.

3.14    **"Class Period"** means the period between September 23, 1999, and March 31, 2003, inclusive.

3.15    **"Class Representative(s)"** and **"Plaintiffs"** mean the following persons:  Gene Barday, Jr., Leonard Banks and Donald Newcome.

3.16    **"Code"** means the Internal Revenue Code of 1986.

3.17    **"Complaints"** means the complaints filed in the lawsuits captioned <u>Newcome and Banks v. Xcel Energy, Inc., et al.</u>, Civil No. 03-2218 (D. Minn.) and <u>Barday v. Xcel Energy, Inc., et al.</u>, Civil No. 03-2219 (D. Minn.).

3.18    **"Defendants"** means Xcel, Wayne H. Brunetti, Douglas W. Leatherdale, C. Coney Burgess, A. Barry Hirschfeld, Margaret R. Preska, Allan L. Schuman, W. Thomas Stephens, Giannantonio Ferrari, Albert F. Moreno, A. Patricia Sampson, Rodney E. Slifer, James J. Howard, David A. Christensen, Roger R. Hemminghaus, Edward J. McIntyre, and David E. Ripka.  **"Individual Defendants"** means the Defendants, except Xcel.

3.19    **"Defendants' Counsel"** means the firms of Jones Day and Briggs & Morgan, P.A. for Xcel and all Individual Defendants except James J. Howard, and Rider Bennett LLP for James J. Howard.

3.20    **"Escrow Agent"** means TCF National Bank Minnesota, which bank or institution shall perform its duties as set forth in this Agreement and in the Escrow Agreement attached hereto as Exhibit E.

3.21    **"Derivative Action"** means the action captioned <u>Gottlieb v. Xcel Energy, Inc., et al.</u>, No. 02-2931, pending in the United States District Court for the District of Minnesota and coordinated under the proceedings captioned <u>In re Xcel Energy, Inc. Securities, Derivative and ERISA Litigation</u>, Master File No. 02-2677 (DSD/FLN).

3.22    **"Final Approval of the Settlement"** means the entry of an Order and Final Judgment approving this Agreement and the Settlement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and the full, final, and favorable determination of any appeals, petitions, motions for reconsideration, or any other proceedings for review or, if no such review proceedings are taken, the expiration of the applicable time to appeal or seek review from such order.

3.23    **"Initial Administrative Expense Payment"** means the costs of the Class Notice and other costs relating to the administration of the Settlement, as mutually agreed by Class Counsel and counsel for Defendants.

3.24    **"Net Settlement Fund"** means the Settlement Fund plus interest that has accrued thereon, less the Attorneys' Fees, Attorneys' Expenses, Administrative Expenses, and the Total Plaintiffs' Case Contribution Compensation, as defined herein.

3.25    **"Notice"** and **"Individual Notice"** means the Notice of Pendency of Class Action, Proposed Settlement, and Hearing attached to this Agreement as Exhibit A.

3.26    **"Order and Final Judgment"** means an order and judgment of the Court approving the Settlement and entry of a final judgment in the form annexed hereto as Exhibit D, or upon terms not materially different from those set forth in Exhibit D.

3.27    **"Person(s)"** means a natural person, a corporation, partnership, association, or any other entity.

3.28    **"Plaintiffs' Case Contribution Compensation"** means the amount of two thousand dollars ($2,000) per Plaintiff, which shall be paid from the Settlement Fund to each Class Representative in recognition of their contributions to the Action.

3.29    **"Plan Account"** means the account or accounts established or existing under the Plans designated by the Plan Administrator into which the Escrow Agent shall transfer the Net Settlement Fund for distribution and allocation to the Class.  Xcel shall take all necessary steps to establish the Plan Account.

3.30    **"Preliminary Approval of Proposed Settlement and Notice"** means the date that the Preliminary Approval Order is entered by the Court.

3.31   **"Preliminary Approval Order"** means an order, substantially in the form annexed hereto as <u>Exhibit C</u>, approving the forms and procedure for providing notice to the Settlement Class, conditionally certifying the named Plaintiffs as the representatives of the Settlement Class and Plaintiffs' Counsel as counsel to the Settlement Class, establishing a procedure for members of the Settlement Class to follow in order to object to the Settlement, and setting a date for a hearing on the approval of the Settlement.

3.32   **"Publication Notice"** means the abbreviated form of Notice, attached to this Agreement as <u>Exhibit B</u>, to be published in the Minneapolis Star-Tribune, the St. Paul Pioneer Press, and USA Today or another national publication mutually agreed upon by Class Counsel and Defendants' Counsel.

3.33   **"Related Parties"** means each of a Defendant's past, present, and future directors, officers, fiduciaries, employees, partners, principals, agents, members, independent contractors, registered representatives, underwriters, issuers, insurers, coinsurers, reinsurers, controlling shareholders, attorneys, accountants, auditors, investment bankers, advisors, consultants, trustees, fiduciaries, personal representatives, predecessors, successors, successors-in-interest, parents, subsidiaries, divisions, assigns, spouses, heirs, executors, administrators, associates, related or affiliated entities, and members of their families.

3.34   **"Released Claims"** means only those claims set forth below and shall not include any claim that has been asserted under the state or federal securities laws by the Plans, the Plans' Trustee or fiduciaries, or any individual member of the Settlement Class directly or derivatively in the Securities Action or the Derivative Action, nor shall it preclude the Plans, the Plans' Trustee or fiduciaries, or any individual member of the Settlement Class from participating as class members in the Securities Action.  **"Released Claims"** means any and all claims, demands,

damages, defenses, rights, liabilities, and causes of action in law or equity whatsoever, known or unknown, matured or unmatured, accrued or unaccrued, fixed or contingent, liquidated or unliquidated, arising under state or federal law or any other source of law, by or on behalf of the Plaintiffs, the Plans, the Plans' fiduciaries, or any member of the Settlement Class on their own behalf and on behalf of any Persons they represent (including the Plans and their respective spouses, heirs, executors, administrators, past and present partners, officers, directors, agents, attorneys, predecessors, successors and assigns), against any of the Released Persons based upon or arising out of or relating in any way (in whole or in part) to the acquisition, disposition or retention by the Plaintiffs, the Plans or any members of the Settlement Class of Xcel stock during the Class Period, including, but not limited to, claims which relate directly or indirectly to the facts, transactions, events, occurrences, acts, disclosures, statements, omissions, or failures to act which were alleged or could have been alleged in any of the Complaints filed in the Action, or which are based on or arise out of or in any way relate to communications with participants or beneficiaries directly or indirectly pertaining to Xcel stock.  Notwithstanding any provision in this Settlement Agreement, excluded from the Released Claims are any claims brought in the Securities Action or Derivative Action.  The **"Released Claims"** also shall include any and all claims by or on behalf of each and every Defendant against Plaintiffs, the Settlement Class and Class Counsel relating to the institution, prosecution or settlement of any or all claims asserted in this action, including, but not limited to, any action for costs or attorney's fees as well as for contribution, indemnification or any other claims relating to payment of the Settlement Fund or any Settlement Claims by the Defendants.

3.35    **"Released Persons"** means each of the Defendants and all their Related Parties, each and every member of the Settlement Class, and Class Counsel.

3.36    **"Securities Action"** means the consolidated securities actions pending in the United States District Court for the District of Minnesota under the caption In re Xcel Energy, Inc. Securities Litigation, Master File No. 02-2677 (DSD/FLN).

3.37    **"Settlement"** means the resolution of the Action in the manner and on the terms set forth herein.

3.38    **"Settlement Claim"** means the total dollar amount of each Authorized Claimant's Settlement Claims, as determined in Section 6.2, below.

3.39    **"Settlement Fund"** means the sum of eight million U.S. dollars ($8,000,000) to be paid by Xcel pursuant to Section 5.1 below.

3.40    **"Total Plaintiffs' Case Contribution Compensation"** means the sum that shall be paid to the named Plaintiffs as Plaintiffs' Case Contribution Compensation.

3.41    **"Xcel"** means Xcel Energy Inc.

3.42    **"Xcel stock"** means the common stock issued by Xcel and traded on the New York Stock Exchange.

## 4.    STIPULATION TO CLASS CERTIFICATION OF THE SETTLEMENT CLASS

4.1    The parties to this Agreement stipulate and agree that for settlement purposes only this Action shall proceed as a non-opt out class action pursuant to Fed. R. Civ. P. Rules 23(a)(1)-(4), 23(b)(1), and (b)(2) with Jane B. Stranch, Esq., of Branstetter, Kilgore, Stranch, & Jennings and Glen Connor, Esq. of Whatley & Drake, L.L.C., as Class Counsel and with a Settlement Class and Class Period as defined above.

## 5.    THE SETTLEMENT FUND

5.1    Within ten (10) business days after the Court enters its Preliminary Approval Order, Xcel shall deposit with the Escrow Agent in an interest-bearing account, pursuant to the terms of the Escrow Agreement, the sum of eight million dollars ($8,000,000), which amount

used to fund the Settlement Fund described in the Escrow Agreement.  Interest earned on the

Settlement Fund under the Escrow Agreement shall accrue to the benefit of, and be added to, the

Settlement Fund.

5.2     Within a reasonable time following receipt of invoices therefore, the Escrow

Agent shall pay from the Settlement Fund the costs of the Class Notice and other costs relating to

the administration of the Settlement (including the Escrow Agent's fees), as mutually agreed by

Class Counsel and Defendants' Counsel.  In the event the Settlement is not approved and the

Order and Final Judgment is not entered, Plaintiffs' Counsel shall reimburse the Settlement Fund

for half the cost of any such expenses paid.

5.3     Within ten (10) days of the Final Approval of the Settlement, the Escrow Agent

shall pay to Class Counsel out of the Settlement Fund (subject to Court approval) the Plaintiffs'

Case Contribution Compensation, in an amount of $2,000 for each Class Representative (a total

of $6,000), which Class Counsel shall remit to the Plaintiffs.

5.4     Also within ten (10) days of the Final Approval of the Settlement, the Escrow

Agent shall pay to Class Counsel out of the Settlement Fund such Attorneys' Fees and

Attorneys' Expenses of Class Counsel as may be approved by the Court in the Order and Final

Judgment.

5.5     Following the payment of amounts specified in Sections 5.2, 5.3 and 5.4, the

Escrow Agent shall pay over the Net Settlement Fund (at the joint written instruction of Class

Counsel and Defendants' Counsel) to the Plan Account for administration by the Administrators,

in accordance with the provisions set forth herein.  The Administrators shall deposit the Net

Settlement Fund into the Plan Account in the following manner:

a.      The Administrators shall provide Class Counsel with written notice of the amount of additional Administrative Expenses incurred in connection with the administration of the Settlement.  Class Counsel promptly shall review the amount claimed as such and, if reasonable, approve such amount for payment out of the Net Settlement Fund.

b.      If requested, Xcel shall assist the Administrators with the calculation of Settlement Claims, the identification of Authorized Claimants, and the payment of Claims.  To the extent Xcel incurs any expense in connection therewith, the Administrators shall reimburse Xcel from the Net Settlement Fund for its reasonable and actual costs incurred. Notwithstanding the foregoing, the Administrators shall be solely responsible for all communications with Authorized Claimants regarding their Claims, and neither Xcel nor its agents shall have any responsibility in this regard.  Plaintiffs' Counsel shall direct the Administrators regarding the manner and content of the Administrators' written or other communications with Authorized Claimants regarding their Claims.  In addition, Class members will be instructed in the Notice and Publication Notice to contact Plaintiffs' Counsel, or an agent designated by them, with any questions regarding the Settlement or Settlement Claims.  Neither Xcel nor its agents shall have any responsibility with respect to such questions.  Further, neither Defendants nor their Related Parties shall have any responsibility, financial obligation or liability whatsoever with respect to the investment or distribution of the Settlement Fund, with respect to

the processing of claims against the Settlement Fund, or otherwise with

respect to the administration of this Settlement or the Settlement Fund.

c.   Although the Defendants deny any wrongdoing, the parties agree that the

payments described above are intended as settlement of breach of

fiduciary duty claims for a monetary remedy under ERISA for allegedly

lost earnings on assets in the Plans and shall be treated as earnings on Plan

assets for all purposes under the Plans. None of the Defendants' payment

to the Settlement Fund represents compensatory or punitive damages or

employer or employee contributions to the Plans.

5.6    Under no circumstances shall Defendants be required to pay more than the

Settlement Amount of eight million U.S. dollars ($8,000,000), as set forth above in Section 5.1.

Upon such payment, Defendants' payment obligations under this Agreement shall be satisfied

and fulfilled.

## 6.    PLAN OF ALLOCATION OF THE NET SETTLEMENT FUND

6.1    Unless otherwise agreed by the parties, within sixty (60) days after filing this

Agreement, the Defendants shall provide the Administrators or their designee with the following

information pertaining to the account(s) in the Plans of each member of the Settlement Class as

identified and maintained in the records of the Plans:

a.   The Claimant's name, last known address, and social security number;

b.   The information necessary to make the calculations in Section 6.2 below.

If precise data is not readily available, the parties shall meet and confer

regarding the data that will be used. This information shall include for

each Claimant: (a) the account balance in U.S. dollars invested in Xcel

stock at the beginning of the Class Period; (b) the dollar value of

purchases of Xcel stock during the Class Period; (c) the dollar value of

sales of Xcel stock during the Class Period; and (d) the account balance in

U.S. dollars invested in Xcel stock as of the end of the Class Period.

    c.    Whether the Claimant is a current participant in either Plan as of the most

recent date for which such information is reasonably available.

6.2    Within thirty (30) days of Final Approval, the Administrators shall calculate the

Claimants' Settlement Claims based on the information described in Section 6.1 and according to

the following court approved-methodology:

    a.    The Administrators, with the assistance of Xcel, if necessary, shall

determine the approximate loss ("Loss") for each member of the

Settlement Class as follows:

$$Loss = (A + B) - C, \text{ where}$$

A = (Value of (50% of the number of shares that had been held in the Plans on September 23,

1999 [Adjusted for the 1.55/share exchange of Xcel for NCE shares at the time of merger],

valued at the December 4, 2001 closing price/share of $27.56)) *less* (Value of those same shares

on the earlier of the March 31, 2003 closing  price of $12.82/share or  Participant's last day of

participation in Company Stock Fund at the closing price on that day)

AND

B = (Purchase price of all company stock purchased from September 23, 1999 *through* March

31, 2003) *less* (Value of all this purchased company stock still held on the earlier of March 31,

2003 or Participant's last day of participation in the Company Stock Fund at the closing  price on

the appropriate day)

AND

16

C = (Sale price of all company stock sold during the period of September 23, 1999 *through* March 31, 2003).

b.  The Losses of the Claimants as calculated in Section 6.2(a) will be totaled to yield the Loss of each Plan as a whole over the Class Period (the "Plan Loss"). The Net Settlement Fund shall be apportioned between the Xcel 401(k) Plan and the NCE Union Plan according to the proportionate size of each Plan's Plan Loss.

c.  The Administrators shall calculate for the Account of each Authorized Claimant an amount which is the same percent of the amount of the Net Settlement Fund allocated to the Plan in question as the Authorized Claimant's Loss bears to the Plan Loss of the Plan in question.

d.  The Administrators shall identify all Claimants whose Settlement Claim is less than twenty-five dollars ($25) ("De Minimis Amounts"). All such Claimants whose Settlement payment is De Minimis shall not receive an award from the Net Settlement Fund. The remaining Claimants shall become Authorized Claimants. The De Minimis Amounts shall then be allocated to the Authorized Claimants on a pro rata basis based on each Authorized Claimant's Loss, and such amounts shall be added to the Settlement Claim for each Authorized Claimant.

e.  In light of the manner in which the data is kept and the ease with which it can be manipulated, it may be appropriate to simplify some of the features of these calculations. Such simplifications are acceptable as long as the two basic features of the distribution are preserved: (1) that all members

of the Settlement Class receive their share of the Net Settlement Fund

based approximately on the formula referenced in § 6.2 which calculates

relative loss of Plan Participants as compared with one another; and (2)

that the distribution take place through the Plans so as to maximize the tax

advantages of investment in the Plans.

6.3     Promptly after calculating each Authorized Claimant's Settlement Claim, the

Administrators shall provide to Defendants the name, social security number, and amount of

each Authorized Claimant's Settlement Claim, together with the total of all such Claims.  Except

for the social security numbers, the same information shall be provided to Class Counsel.

6.4     Any Claimant who is an Authorized Former Participant Claimant shall have his or

her account reinstated in the Plan(s) in which he or she held Xcel stock during the Class Period,

for the sole purpose of receiving his or her allocation from the Net Settlement Fund.

6.5     As promptly as possible after deposit of the Net Settlement Fund into the Plan

Account pursuant to Section 5.3, the Administrators, or their agents, shall cause an amount to be

allocated to each Authorized Participant Claimant's or Authorized Former Participant Claimant's

Plan account equal to such individual's Settlement Claim.  Such amount shall be allocated to the

Authorized Claimant's contribution source sub-account holding Xcel stock during the Class

Period in accordance with the existing investment elections in effect for such sub-account

(except that amounts credited to the ESOP Accounts in the Plans, and all amounts credited to

Authorized Former Participant Claimants, shall be invested initially in the Vanguard Prime

Money Market Fund investment option), shall be treated and administered thereafter for all

purposes under the Plans as income credited to the Authorized Claimant's contribution source

sub-account under the Plans, and shall thereafter be distributed only in accordance with the applicable provisions of the Plans.

6.6    The Administrators shall make available to Defendants' Counsel and Class Counsel any and all summaries, compilations, calculations, or tabulations of the claims and amounts described in this Section 6, upon the request of Defendants' Counsel, Class Counsel, or the Court.

## 7.    THE SETTLEMENT FUND AND THE ADMINISTRATORS

7.1    The Parties shall treat the Settlement Fund as a "qualified settlement fund" within the meaning of the regulations issued under Section 468B of the Code and any comparable provision of state or local law (collectively, the "Section 468B Regulations"). The Administrator shall be the "administrator" for purposes of the Section 468B Regulations. As such, it shall comply with all of the requirements imposed on administrators by the Section 468B Regulations, including, without limitation, obtaining a taxpayer identification number for the Settlement Fund, preparing and filing all income tax returns and information returns required to be filed by the Settlement Fund and paying all taxes required to be paid by the Settlement Fund. Xcel shall be the "transferor" for purposes of the Section 468B Regulations. As such, it shall comply with all of the requirements imposed on transferors by the Section 468B regulations, including, without limitation, delivering to the Administrator a statement that complies with section 3(e) of the Section 468B Regulations and attaching a copy of that statement to its federal income tax return for the taxable year in which it makes the required payment to the Settlement Fund.

7.2    Each Authorized Participant Claimant and Authorized Former Participant Claimant shall be solely responsible for the federal, state and local tax consequences to him, her or it of the crediting of an allocable share of the Net Settlement Amount to his, her or its Plan account pursuant to Section 6.5 of this Agreement. Xcel shall take the position for federal, state

and local tax purposes that the amounts so credited are not reportable as income to the

Authorized Participant Claimants or Authorized Former Participant Claimants until distributed

under a Plan, but no Defendant or Related Party shall have any liability to any Authorized

Participant Claimant, Authorized Former Participant Claimant or other person (other than a

taxing authority) if a taxing authority determines that Xcel's position is incorrect.

7.3     The Administrators may resign by sixty (60) days written notice to the Court.

The Administrators may be removed by the Plaintiffs at any time.  In the event of the removal or

resignation of the Administrators, the Plaintiffs may appoint successor Administrators.  Upon

executing a written acceptance of an executed copy of this Order, and on the settlement of the

accounts and discharge of the prior Administrators, the successor Administrators shall have,

without further act on the part of anyone, all the duties, powers, functions, immunities, and

discretion granted to the original Administrators.  Any Administrators who are replaced, by

reason other than death, shall execute all instruments and do all acts that may be necessary or

that may be ordered or requested in writing by Plaintiffs or the Court or by any successor

Administrators to transfer administrative powers over the Settlement Fund to the successor

Administrators.  The appointment of successor Administrators, if any, shall not under any

circumstances require the Defendants to make any further payment of any nature into the

Settlement Fund or otherwise.  All notices hereunder, including notices of resignation or removal

of the Administrators, must be in writing and directed to the Court, the Administrators, Class

Counsel, and the Defendants' Counsel.

7.4     The Administrators and, if necessary, the Administrators' Contractors, shall in

any event remain available and engaged to respond to inquiries from members of the Plaintiff

Class regarding their Claims or any other aspect of this Agreement for six months after the Net

Settlement Fund is distributed to Authorized Claimants.

7.5     The parties may apply to the Court to alter or amend the settlement administration

terms of this Agreement at any time, or from time to time, provided, however, that no such

amendment or modification shall in any way affect:  (a) the purposes of the Settlement Fund; (b)

the Court's jurisdiction over the parties; (c) the powers, duties, and liabilities of the

Administrators under this Order; (d) the total amount of money the Defendants are required to

pay into the Fund; or (e) any material term of the Agreement.

## 8.     **STRUCTURAL CHANGES TO THE PLANS**

8.1     Subject to the requirements of the collective bargaining agreements in place

between Xcel and its work force, Xcel will undertake to amend the Plans to provide that each

participant who has at least five years of service shall have the right to direct the investment of

his or her ESOP Accounts, as such term is defined in the Plans, in the same manner and among

the same investment alternatives as are available for the investment of employee contributions to

the Plans.

## 9.     **SUBMISSION TO JURISDICTION OF COURT**

9.1     Each and every member of the Settlement Class and each and every Defendant

submits to the jurisdiction of the Court and will be bound by the terms of this Agreement,

including, without limitation, any and all releases, conditioned on the Final Approval of the

Settlement and subject to their right to object, as well as any other order of the Court including,

without limitation, the Order and Final Judgment barring further litigation against any of the

Released Persons on the Released Claims.

9.2     Each Claimant specifically and personally submits to the jurisdiction of the Court. Any and all disputes relating to Claims that are not satisfactorily resolved by the Administrators shall be submitted to the Court for final resolution.

## 10.     NOTICE TO MEMBERS OF THE SETTLEMENT CLASS

10.1     The Administrators shall send the Individual Notice by first-class mail, postage prepaid, to the address of each member of the Settlement Class at the address provided by the Defendants, or such other addresses as Plaintiffs' Counsel has available, within thirty (30) days after entry of the Preliminary Approval Order.  The Administrators also shall cause the Publication Notice, which shall be an abbreviated form of the Notice that adequately informs the Settlement Class of the details of the Settlement and their right to object thereto, to be published in the Minneapolis Star-Tribune, the St. Paul Pioneer Press, and USA Today or some other national publication mutually agreed upon by Class Counsel and Defendants' Counsel.  The costs and expenses associated with the Publication Notice, the Notice, and reasonable efforts by the Administrators to identify addresses for members of the Settlement Class, shall be an Administrative Expense and will be paid from the Settlement Fund in accordance with Section 5, above.  Plaintiffs' Counsel may also post the Notices (Exhibits A and B) on their websites.

## 11.     PROCEDURE FOR APPROVAL OF SETTLEMENT

11.1     No later than ten (10) days after execution of this Agreement, Class Counsel shall file a motion with the Court seeking immediate entry of the Preliminary Approval Order and, after Notice is given to the Settlement Class, a hearing will be held by the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure on the fairness of the Settlement to the Class ("Settlement Fairness Hearing") and entry of the Order and Final Judgment approving the settlement.

11.2    The Preliminary Approval Order proposed by the parties and submitted with Class Counsel's motion for approval of the settlement shall:

a.    Give preliminary approval to this Agreement;

b.    Conditionally certify the Settlement Class for settlement purposes only pursuant to Rule 23(a) and b(1) and b(2) of the Federal Rules of Civil Procedure and appoint Plaintiffs' Counsel as counsel for the Settlement Class;

c.    Approve the form of the Individual Notice, and direct the Administrators to mail the Notice to each potential member of the Settlement Class, and publish within thirty (30) days of the entry of the Preliminary Approval Order the Publication Notice in the Minneapolis Star-Tribune, the St. Paul Pioneer Press, and USA Today or another national publication mutually agreed upon by Class Counsel and Defendants' Counsel;

d.    Set a briefing schedule and a date and time for the Settlement Fairness Hearing to determine whether the Agreement is fair, reasonable, and adequate to the members of the Plaintiff Class, to determine Plaintiffs' Counsel's Attorneys' Fees and Expenses, and to consider whether the Court should enter an Order and Final Judgment;

e.    Set a deadline by which all objections to the Settlement must be made;

f.    Stay the Action until further order of the Court and enjoin the filing or prosecution by any Class members of any actions based on or in any way related to the Released Claims until the Settlement Fairness Hearing; and

g.      Determine pursuant to Rule 23(c)(2) of the Federal Rules of Civil

Procedure that the Notices constitute the best notice practicable under the

circumstances and due and sufficient notice of the hearing and the rights

of the members of the Plaintiff Class as to all Persons entitled to those

Notices.

11.3    No later than five (5) days after Preliminary Approval of the Settlement, the

Plaintiffs shall submit the Agreement and accompanying Exhibits to the U.S. Department of

Labor ("DOL") with a notice of the date and time of the Settlement Fairness Hearing.

11.4    Prior to the Settlement Fairness Hearing, an independent fiduciary selected by

Xcel and approved by Plaintiffs' Counsel, which has acknowledged in writing that it is a

fiduciary with respect to the settlement of this Action on behalf of the Plans (the "Independent

Fiduciary"), shall have approved and authorized in writing the Settlement in accordance with

Prohibited Transaction Class Exemption 2003-39.  If the Independent Fiduciary disapproves or

otherwise does not authorize the Settlement as set forth in this paragraph prior to the Settlement

Fairness Hearing, then the Defendants shall have the option to waive this condition, such option

to be exercised in writing within the earlier of (i) ten (10) days after the Defendants' receipt of

the Independent Fiduciary's written determination, or (ii) three (3) days prior to (a) the date set

for the Settlement Fairness Hearing, or (b) such later date to which the Court may, in its

discretion, continue the Settlement Fairness Hearing.  If the Independent Fiduciary has not

rendered a written report regarding the Settlement by the eleventh day prior to the date set for the

Settlement Fairness Hearing, the Defendants may ask the Court to continue the Settlement

Fairness Hearing to allow the Independent Fiduciary to complete its assessment of the

Settlement.  If the Defendants elect not to waive this condition, then this Settlement Agreement shall terminate and become null and void and the provisions of Paragraph 13.9 shall apply.

11.5    The Order and Final Judgment proposed by the parties and submitted with the motion for approval of the Settlement shall:

a.      Approve this Agreement and Settlement as a fair, reasonable, and adequate settlement, pursuant to Rule 23 of the Federal Rules of Civil Procedure, and compromise of this Action, and direct payment of the Settlement Fund and compliance with all other terms of this Agreement;

b.      Certify the Settlement Class pursuant to Rule 23(a) and b(1) and b(2) of the Federal Rules of Civil Procedure;

c.      Dismiss the Complaint and the Action against each of the Defendants with prejudice on the merits and without costs to any party;

d.      Terminate any and all of the Released Claims;

e.      Terminate any and all rights of the Defendants for reimbursement of their attorneys' fees in the Action;

f.      Bar and enjoin any action against Defendants, Defendants' Counsel, any member of the Settlement Class, or Class Counsel based on the amount of any Settlement Claim issued pursuant to the Plan of Allocation approved in the Final Approval of the Settlement;

g.      Direct that each party shall bear its own costs to the extent not allocated in this Agreement;

h.      Reserve jurisdiction over this Action and over any and all further proceedings concerning the administration and consummation of the

Settlement and reimbursement of Administrative Expenses, to the extent any party deems necessary;

i.      Permanently bar and enjoin the Plaintiffs, the Plans, the Plans' fiduciaries, all members of the Settlement Class and any other party from the institution or prosecution, either directly, indirectly, or in a representative capacity, of any other action in any court asserting any Released Claim against any Released Person; and

j.      Contain such other and further provisions consistent with the terms of this Agreement as the Court may deem advisable and appropriate.

## 12.    PLAINTIFFS' COUNSEL'S ATTORNEYS' FEES AND EXPENSES

12.1    Plaintiffs' Counsel shall receive Attorneys' Fees and Expenses as awarded by the Court. The Attorneys' Fees and Expenses shall be paid to Plaintiffs' Counsel from the Settlement Fund within ten (10) days following the Final Approval of the Settlement. Plaintiffs' Counsel shall be solely responsible for allocating attorneys' fees among co-counsel, and Defendants shall bear no responsibility for this allocation and shall not be subject to suit under this Agreement or otherwise for the same. Defendants will not object to or oppose Class Counsel's application for an award of reasonable Attorneys' Fees and Expenses and shall take no position on the amount of such fees and expenses sought by Plaintiffs or awarded by the Court. It is agreed that the allowance or disallowance (in whole or in part) by the Court of any application by Plaintiffs' Counsel for an award of fees or expenses is not a term or condition of the settlement set forth in this Agreement, and any order or proceedings relating thereto, or any appeal from any such order, shall not operate to terminate or cancel this Agreement.

## 13.    **RELEASE OF CLAIMS**

13.1    Upon Final Approval of the Settlement, the Plaintiffs, the Plans, the Plans' fiduciaries, and all members of the Settlement Class shall be deemed to have, and by operation of the Order and Final Judgment shall have, fully, finally, and forever released and shall be forever barred from the prosecution of any and all Released Claims against any and all of the Released Persons.

13.2    Upon Final Approval of the Settlement, Defendants shall be deemed to have, and by operation of the Order and Final Judgment shall have, fully, finally, and forever released, and are forever barred from the prosecution of, any and all rights for reimbursement of attorneys' fees or costs incurred in connection with the Actions, as against the Plaintiffs, Plaintiffs' counsel and all members of the Settlement Class.

13.3    The Release of Claims set forth in this Agreement shall have no impact whatsoever on any damages that are or could be sought or recovered in the Securities Action, and under no circumstances shall the Settlement Fund or any Settlement Claim be applied as a set-off or credit against any judgment, recovery, or settlement obtained in the Securities Action.

13.4    The Release of Claims set forth in this Agreement shall have no impact whatsoever on the obligations set forth in and required by the Agreement. The Release of Claims granted in this Agreement shall be effective as a bar to any and all currently unsuspected, unknown, or partially known claims within the scope of the express terms and provisions of the Release set forth in this Section, and Sections 3.33 and 3.34. Accordingly, Plaintiffs hereby expressly waive, on their own behalf and on behalf of the Plans, the Plans' fiduciaries, and all members of the Class, any and all rights and benefits respectively conferred upon them by the provisions of Section 1542 of the California Civil Code. Section 1542 reads in pertinent part:

> "A general release does not extend to claims that the creditor does
> not know or suspect to exist in his favor at the time of executing
> the release, which if known by him must have materially affected
> his settlement with the debtor."

The parties hereby acknowledge that the foregoing waiver of the provisions of Section 1542 of

the California Civil Code was separately bargained for and that neither Plaintiffs on the one

hand, nor Defendants on the other, would enter into this Settlement Agreement unless it included

a broad release of all unknown claims.  The parties each expressly agree that all release

provisions in the Agreement shall be given full force and effect in accordance with each and all

of their express terms and provisions, including those terms and provisions relating to unknown,

unsuspected or future claims, demands, and causes of action.  Plaintiffs assume for themselves

on their own behalf and on behalf of the Plans, the Plans' fiduciaries, and the Class, and Settling

Defendants assume for themselves on their own behalf, the risk of his, her, or its respective

subsequent discovery or understanding of any matter, fact or law, that, if now known or

understood, would in any respect have affected his, her, or its entering into this Agreement.

    13.5    This Agreement shall in no event be construed as or be deemed evidence of an

admission or a concession on the part of any party with respect to any claim, fault, liability, or

damage whatsoever.  The Defendants deny any and all wrongdoing of any kind whatsoever and

do not concede any infirmity in the defenses to the Action that the Defendants have asserted or

intend to assert.  The Defendants enter into this Agreement in order to avoid further expense,

inconvenience, risk, and delay and to dispose of expensive, burdensome, and likely protracted

litigation.  The Plaintiffs, the Plans and the Settlement Class also do not concede any infirmity in

any of their claims against Defendants and enter into this Settlement Agreement in order to avoid

further expense, inconvenience, risk, and delay and to dispose of expensive, burdensome, and

likely protracted litigation.

13.6    This Agreement, whether or not consummated, and any proceedings taken pursuant to this Agreement, shall not be construed as, or deemed to be evidence of, any presumption, concession, or admission by any of the parties of:  (a) the truth of any fact alleged by Plaintiffs or denial alleged by Defendants; (b) the validity of any claim or defense that has been or could have been asserted in the Action; (c) the existence or non-existence of any liability, breach of duty, prohibited transaction, violation of law, fault, wrongdoing, or other wrongful act of any of the Defendants; (d) or as evidence, a presumption, a concession, or an admission of any infirmity in any claim or defense of any of the parties.

13.7    This Agreement shall not be construed as an admission or concession that the consideration to be given in Settlement represents the amount, if any, which could or would have been recovered after trial.

13.8    Plaintiffs and Xcel shall each have the right to terminate this Agreement by providing written notice of their election to do so to all of the other parties hereto in the event that (a) the Court declines to enter the Preliminary Approval Order or some other order containing or incorporating the terms herein; (b) the Court declines to enter the Order and Final Judgment or some other order consistent with the terms herein; or (c) the Order and Final Judgment approving settlement is modified or reversed in any material respect on appeal, reconsideration, or rehearing (provided, however, that any modification or reversal as to Plaintiffs' Counsel's Attorneys' Fees or Expenses shall not be deemed material for purposes of this paragraph).  The parties agree that they will negotiate in good faith to preserve this Agreement prior to exercising their rights of termination under this paragraph.

13.9    In the event this Agreement is terminated, it shall become null and void and of no further force and effect, the parties shall be deemed to have reverted to their respective status and

positions as of the date immediately before the date of the execution hereof, and the parties shall proceed in all respects as if this Agreement had not been executed. In the event of such termination, the funds paid into the Settlement Fund, plus interest earned thereon, less Administrative Expenses incurred as of the date of termination, shall be returned to the entity that paid the funds. If the Agreement is terminated, under no circumstances shall Plaintiffs, Class Counsel, or the Administrators be required to reimburse Defendants for Administrative Expenses already incurred as of the date of termination, except as set forth in Section 5.2.

### 14.    COOPERATION OF THE PARTIES AND THEIR COUNSEL

14.1    The parties and their counsel agree to cooperate fully with one another to request Court approval of this Agreement, and to use their best efforts to effect and consummate the terms of this Agreement and the Settlement.

14.2    Within 90 days of the Final Approval of the Settlement, the parties to this Agreement shall comply with the provisions of the Joint Stipulation and Protective Order entered by the Court, as relates to the destruction or return of confidential materials.

14.3    Before the Plaintiffs or their counsel issue any press release relating to the Action or its resolution, the proposed press release will be given to Xcel for approval. The press release will not be issued unless Xcel consents in writing to its issuance; Xcel will not unreasonably withhold that consent.

### 15.    GENERAL PROVISIONS

15.1    This Agreement incorporates by reference all Exhibits attached to it.

15.2    This Agreement and the attached Exhibits A through E, incorporated herein by reference, constitute the entire agreement of the parties and may not be modified or amended except by a writing signed by all parties.

15.3    The captions to this Agreement appear for the purpose of convenience only and have no legal effect.

15.4    Administration and consummation of the terms of this Agreement shall take place under the supervision and authority of the Court, and all parties hereto expressly consent to the jurisdiction of the Court for such purposes.

15.5    The parties to this Agreement may execute this Agreement in any number of counterparts and on separate counterparts, each of which shall constitute an original, but all counterparts together shall constitute one and the same document.

15.6    Except insofar as federal law is controlling, this Agreement and all documents necessary to effect this Agreement shall be governed by and construed in accordance with the laws of the State of Minnesota.

15.7    Should any provision of this Agreement require judicial interpretation, the parties agree that the Court or other adjudicating body shall not apply a presumption that the terms be more strictly construed against the party who prepared same, it being agreed that all parties collectively participated in the negotiation and preparation of this Agreement.

15.8    The parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Action.  The parties reserve their right to freely rebut, in a manner that any such party determines to be appropriate, any contention made in a public forum to the effect that the litigation was brought or defended in bad faith or without reasonable basis.

15.9    Any notice required or desired to be given to any of the parties to this Agreement shall be delivered by overnight mail and facsimile transmission addressed as set forth in Exhibit C, or as may otherwise be designated by any party by written notice to the other parties.

15.10   Any and all statutes of limitations, statutes of repose, and/or their defenses based upon the passage of time applicable to Plaintiffs' claims against Defendants shall be tolled for the period from the filing of this Agreement with the Court to the earlier of the date the Order and Final Judgment is entered or the termination of this Agreement.

15.11   This Agreement shall be binding upon and inure to the benefit of the parties hereto, Related Parties, and their respective successors and assigns.

15.12   The undersigned are duly authorized to execute this Agreement on behalf of the parties they represent.

WHEREFORE, the parties stipulate and agree that they will move the Court to enter an order in the form of the Preliminary Approval Order, attached hereto as Exhibit C, and schedule a hearing on approval of this Settlement under the terms and conditions herein described on the first available date at least 60 days after entry of the Preliminary Approval Order.

January 14, 2005

James G. Stranch, III
Jane B. Stranch
**BRANSTETTER, KILGORE,
       STRANCH & JENNINGS**
227 Second Avenue, North, 4th Floor
Nashville, Tennessee 37201-1631
(615) 254-8801 / (615) 255-5419 (fax)


Joe R. Whatley, Jr.
Glen M. Connor
WHATLEY DRAKE, LLC
2323 Second Avenue North
Birmingham, AL 35202
Telephone: 205-328-9576

***Co-Lead Counsel for Plaintiffs***



Ellen Kelman
BRAUER, BUESCHER, GOLDHAMMER,
KELMAN & DODGE
1563 Gaylord St.
Denver, CO 80206
Telephone: (303) 333-7751

John A. Cochrane
COCHRANE & BRESNAHAN, PA
24 East 4th Street
Saint Paul, MN 55101

Jay Smith
GILBERT & SACKMAN, a Law
Corporation
6100 Wilshire Blvd., No. 700

Los Angeles, CA 90048
Telephone: 323-938-3000

George E. Barrett
Douglas S. Johnston, Jr.
BARRETT, JOHNSTON & PARSLEY
217 Second Avenue, North
Nashville, TN  37201
Telephone:   615-244-2202
Facsimile:   615-252-3798

Brian J. Robbins
ROBBINS UMEDA & FINK, LLP
610 West Ash Street, Suite 1800
San Diego, CA 92101-3350
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

*Counsel for Plaintiffs*

January *14*, 2005

John M. Newman, Jr.
Geoffrey J. Ritts
**JONES DAY**
North Point
901 Lakeside Avenue
Cleveland, OH  44114
216.586.3939/216.579.0212 (fax)

Timothy R. Thornton
**BRIGGS & MORGAN, P.A.**
2400 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
612.334.8400/612.3348650 (fax)

*Attorneys for All Defendants except James J. Howard*

January 14, 2005

Rachna B. Sullivan
**RIDER BENNETT LLP**
33 South Sixth Street
Minneapolis, MN  55402
612.340.7951/612.340-7900 (fax)

*Attorney for Defendant James J. Howard*